# IN THE MATTER OF THE APPLICATION OF KIKU YU FOR A WRIT OF HABEAS CORPUS.

## August 12, 1915.

1. *Conflict of laws—Divorce according to Japanese procedure:* Divorce by Japanese procedure is not recognized in the United States.

2. *Marriage by correspondence:* Marriage by correspondence between parties living one in Hawaii and the other in Japan, is not recognized in the United States.

3. *Immigration—Board of special inquiry:* A board of special inquiry under the immigration laws, made up of the immigration inspector, who makes a preliminary examination of an alien desiring to land and detains him for examination before such board, and two other immigration inspectors, is not a legal board, and is without jurisdiction to decide such alien's right to land.

4. *Same—Decision of incompetent board refusing landing to alien —Status of alien under such decision:* An alien refused landing by a board so constituted, may not be detained in custody awaiting the determination of the respondent's appeal, or a new trial of his right to land by a competent board, but may be discharged under bond to appear in case their decision should be reversed on appeal, and a new board of special inquiry be constituted to try the case.

*Habeas Corpus:*    Hearing on traverse to return.

*G. S. Curry* for petitioner.
*J. W. Thompson,* Assistant U. S. Attorney, for respondent.

DOLE, J.    The petitioner applied for a writ of habeas

corpus, which was issued and she was brought into court. It appears that one Rihei Yu came to this country a number of years ago, with his wife, Tsuya; that after living here a short time his wife deserted him and finally lived with another man; that a divorce between them, according to Japanese procedure, was obtained, whereupon the said Rihei Yu and the petitioner were married by correspondence—she then living in Japan—according to Japanese procedure. The petitioner was detained from landing on the ground that Rihei Yu was still a married man and that her coming to Hawaii to live with him would involve her in bigamous relations with him, and therefore that she was brought here for immoral purposes and was not entitled to land.

[1] [2] The court does not recognize a marriage of the kind alleged, nor does it recognize a Japanese divorce as alleged, of parties resident in Hawaii.

After the arrival of the petitioner here, on June 7, 1915, and after the issuance of said writ of habeas corpus, on July 9th, it appears that a legal divorce was otained in the courts of the Territory by Rihei Yu, divorcing him from his former wife. Evidence also was given of the issuance of a license to marry to the said Rihei Yu and Kiku Yu, about the 15th day of June, after the issuance of the writ of habeas corpus. Evidence of the divorce and license to marry was admitted, not as affecting her right to land on the ground of the removal of all obstacles to their union, as they were obtained subsequent to the issuance of the writ of habeas corpus, but as bearing on the question of the purpose with which Kiku Yu, the petitioner, came to Honolulu.

It is clear to me that, although when she arrived in Honolulu she could not have legally married Rihei Yu without a subsequent decree of divorce, yet both she and Rihei Yu, in their ignorance of the marriage laws of Hawaii and their confidence in the effectiveness of the Japanese laws of marriage and divorce, as affecting their status, arranged her

coming entirely free from any conscious immoral purpose, but that they both intended and expected that they should and would be man and wife here.

. The board of special inquiry have decided otherwise, and I do not feel that its decision on this point is a matter that this court might interfere with, it being a decision of fact, were this the only point to be considered. The traverse to the return, however, raises another point, and that is that the detention of the petitioner is illegal for the reason that the board of special inquiry which decided that she should be sent back to Japan was without jurisdiction and its decision void, inasmuch as Jackson L. Milligan, one of such board, was the inspector who detained the petitioner for examination as to her right to land before the board of special inquiry.

It appears that Mr. Milligan acted as the examining immigration inspector at the preliminary examination of the petitioner, with other passengers who had arrived with her on the same vessel from Japan, and detained her for examination before a board of special inquiry. Thereafter the said Kiku Yu was examined by a board of special inquiry, of which board the said Milligan was a member.

[3] Counsel for Kiku Yu, in his traverse to the respondent's return, contends that a board of special inquiry including as one of its three members the inspector who had detained an arriving alien for examination before such board, as one not clearly entitled to land, was not such a board of special inquiry as is required by the immigration laws and regulations, and was without jurisdiction to try the petitioner's right to land. The statute;—Act of 1907, s. 25, 34, State. 898, 906, provides that such board "shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall from time to time designate as qualified to serve on such board: *Provided,* that at ports where there are fewer than three immigrant in-

spectors, other United States officials may be appointed." The case of *United States ex rel. Pasos v. Redfern, Com. of Im.*, 180 Fed. 500, which is parallel to this on this point, is cited by petitioner's counsel in support of his contention. The opinion in that case holds that the words "fewer than three immigrant inspectors" should be construed to mean *fewer than three immigrant inspectors eligible to serve,* and continues as follows:

"It is fundamental in American jurisprudence that every person is entitled to a fair trial by an impartial tribunal, and a board of special inquiry constituted as in this case is at least open to suspicion. I do not believe the law contemplates that the inspector who makes the preliminary examination shall serve on the board of special inquiry, and I must hold in this case that the board which denied to petitioner the right to land was illegal and without power."

The construction adopted in the cited case seems to follow the rule that "all laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. . . . The reason of the law in such cases should prevail over its letter." *United States v. Kirby*, 74 U. S. 482, 486-487. The spirit of the law requires a fair hearing for arriving immigrants in regard to whom there is a doubt as to their right to land It would hardly be contended that the letter of the law would be strictly carried out if one of the inspectors was a near relative of the arriving immigrant, or a partner in business with him. The examining inspector in these cases may be said to be like a committing magistrate who, by general opinion, is disqualfied from sitting with another court in a case committed by him to such court; and a law which would allow such jurisdiction would be generally regarded as defective legislation. The record of the examination of petitioner before the board of special inquiry contains an incident which suggests the danger of the practice. At the close of the examination Mr. Milligan made a motion that petitioner be

denied admission and be returned to Japan, which was seconded by another member and concurred in by the third. Of course in cases where the examining inspector has reached a conclusion unfavorable to the immigrant, his presence on the board would be likely to be an element unfavorable to an impartial hearing. The leading part that Mr. Milligan took in the final decision of the board may have had no significance, or it may be the straw indicating a desire on his part to carry the decision of the board in support of his previous ruling. Whatever may have been his exact attitude, his presence raises suspicions unfavorable to the status of the board as an impartial tribunal.

I am disposed to follow the precedent of the *United States ex rel. Pazos v. Redfern,* 180 Fed. 500, and hold that the board of special inquiry as constituted in this case was not a legal board under the statute.

[4] Under this ruling, what is the status of the petitioner? The case of *Chin Yow,* 208 U. S. 8, appears to apply and yet that was a case in which a person claiming to be a citizen of the United States was alleged to have been deprived of a fair hearing. The court ruled that upon proof of such unfair hearing, the trial court was authorized to try the case on the merits. The decision, however, contains language which might limit such authority in cases where the question of citizenship was an issue, to-wit, "As between the substantive right of citizens to enter and of persons alleging themselves to be citizens to have a chance to prove their allegation on the one side and the conclusiveness of the commissioner's fiat on the other, when one or the other must give way, the latter must yield. In such a case something must be done, and it naturally falls to be done by the courts." With this doubt in my mind, I will take the clearer way. See *ex parte Tsuie Shee,* 218 Fed. 256, 259. The petitioner may not be indefinitely detained awaiting a determination of an appeal by the respondent or a due hearing of the question of her right to land by a

competent tribunal. It is ordered that she be discharged from custody upon giving bond in the sum of one hundred dollars, conditioned that she will surrender herself to the immigration officers in case this decision shall be reversed on appeal, or in case a new board of special inquiry shall be constituted to try her right to land.